# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

KENDRIN CLEPPER,         )
                                    )
      Plaintiff,         )
                                    )
v.                               )    Case No. 2:17-cv-01107-JEO
                                    )
NANCY BERRYHILL, Acting    )
Commissioner of Social Security,   )
                                  )
      Defendant.      )

## MEMORANDUM OPINION

Plaintiff Kendrin Clepper brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying him disability insurance benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), Fᴇᴅ. R. Cɪᴠ. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff filed his current application in March 2014, alleging he became

disabled beginning July 1, 2010. It was initially denied by an administrative law

judge ("ALJ"). The Appeals Council ("AC") also denied Plaintiff's request for

review. (R. 1).[2]

# II. FACTS

Plaintiff was 29 years old at the time of the ALJ's decision that is under

review. (R. 31). He has a high school education and past work experience as a

fast food worker, a rifle crew member with the United States Marine Corps, and a

coal mine roof bolter. (R. 31). He alleges disability due to depression, post-

traumatic stress disorder ("PTSD"), bilateral knee pain, bilateral hand condition,

nail nevus and right trapezius pain. (R. 64).

Following Plaintiff's administrative hearing, the ALJ found that he had the

following medically determinable severe impairments: PTSD, depression,

degenerative joint disease, eczema, history of foot fracture, and toe deformity. (R.

23). He also found Plaintiff's history of substance abuse, bilateral knee strains,

and pes planus were non-severe limitations on his ability to work. (R. 24). He

---

[2]References herein to "R. ___" are to the administrative record found at documents 6-1
through 6-9 in the court's record.

further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id*.) The ALJ determined that Plaintiff was capable of performing light work with some limitations. *See* 20 C.F.R. § 404.1567(b). After finding that Plaintiff could not perform his past relevant work, the ALJ determined that he could perform jobs existing in the national economy such as electrical parts cleaner, fixture assembler, and line worker. (R. 31-32, 66). Accordingly, he concluded Plaintiff was not disabled. (R. 32).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is

"more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that

results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[3] The plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

# V.  DISCUSSION

Plaintiff initially asserts that his impairments met the required level of severity of Listing 12.06 - dealing with anxiety related disorders - because he has satisfied the criteria of subpart 5 of paragraph A.  (Doc. 10 at 6-9).  The Commissioner responds that this argument fails because "it completely ignores the requirement that Plaintiff must *also* satisfy the criteria of Listing 12.06's paragraph B or paragraph C *in addition to* paragraph A."  (Doc. 11 at 8 (italics in original)).  The undersigned agrees with the Commissioner.

Plaintiff can establish his disability if he proves his impairments meet or equal a listing.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. ...  To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." ...

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 1224) (citations omitted).  The regulations provide that for a claimant to meet the requirements of a listing, he must have a "medically determinable impairment(s) that satisfies all of the criteria of the listing."  *See* 20 C.F.R. § 404.1525(d); *see also* 20 C.F.R. § 404.1526 (an

6

"impairment(s) is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment").

The United States Supreme Court has stated, "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Court further stated, "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment." *Id.* at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

To satisfy this element of his claim, Plaintiff must establish the requirements of Listing 12.06 by showing that he satisfies the criteria in paragraph A and either paragraph B or C. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06; *Gordon v. Colvin*, 2014 WL 3729632, *7 (N.D. Ala. July 24, 2014) (J. Acker). "The A criteria of the Listings set forth clinical findings that medically substantiate a mental disorder. Listing 12.00A. The criteria in paragraphs B and

C describe functional limitations that would prevent any gainful activity." *Id.* at *8. To satisfy the B criteria of Listing 12.06, Plaintiff must establish he has at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* To satisfy the C criteria of Listing 12.06, Plaintiff must show that the mental impairment results in the "complete inability to function independently outside the area of one's home." *Id.*

Assuming that the record demonstrates that Plaintiff suffers from "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress," the next issue is whether Plaintiff has satisfied the criteria of paragraph B or C in Listing 12.06.[4] 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06(A)(5). *Vice v. Berryhill*, No. 2:16-cv-0771-TMP, 2017 WL 4340513, *4

---

[4]Plaintiff notes in his brief that the ALJ also considered Listing 12.04 ( Affective Disorders). However, he makes no argument that his mental condition meets or medically equals this Listing. (*See* Doc. 10 at 6-13). The Commissioner contends that this argument is abandoned. (Doc. 11 at 7, n.2). The court agrees. *See Access Now, Inc. v. Southwest Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) (stating that "the law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

To the extent the Commissioner argues that Plaintiff has abandoned his Listing 12.06 argument because he did not challenge the substantive evidence supporting the ALJ's conclusion (*see* Doc. 11 at 9-10), the court disagrees. Plaintiff arguably does challenge this ruling for not adequately considering the VA's disability rating and other evidence related to this Listing. (*See* Doc. 10 at 6-13).

(N.D. Ala. Sept. 29, 2017) (stating "i[t] is not enough merely to meet the diagnostic description in paragraph A; additional criteria from either paragraphs B or C also must be met").

As noted above, to satisfy the paragraph B criteria, Plaintiff must demonstrate two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06(B). The ALJ expressly considered the paragraph B criteria and concluded that Plaintiff had only moderate restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and one to two episodes of decompensation, each of extended duration. (R. 25-26). As discussed immediately below, the ALJ's decision is supported by substantial evidence.

With regard to activities of daily living, the record demonstrates with regard to activities of daily living that Plaintiff helps care for his children "to the best of his ability," including looking after his 7-year-old and 5-year-old children while his wife attends school. (R. 25, 55, 59, 166, 184). He has no issues with performing personal care, such as dressing or bathing (R. 25, 166); he is able to

pay bills, handle his savings and checking accounts, and handle money, including counting change (R. 25); he is able to drive a car and use public transportation (R. 25, 55, 168); he was able to attend college classes after his alleged onset date, including up until a few months before his hearing (R. 25, 51-52, 254); and he does laundry and helps somewhat around the house (R. 54).  He did state in his Adult Function Report and a disability questionnaire that he did not prepare any meals or help with household chores.  (R. 167, 181; *see also* R.185).

With regard to social functioning, the record shows that Plaintiff stated that while he is able to go out in public (*e.g.*, doctors' appointments), he does not like to socialize or be around other people.  (R. 169-70, 175; *see also* R. 188-89).  As just noted, however, he was able to attend college classes.  Finally, he states that he does not follow instructions well, he easily gets angry with people, and he does not hand stress well.  (R. 25, 165, 170-71).

With regard to concentration, persistence, and pace, Plaintiff is able to handle basic financial matters, attend school, and watch television – but not as often as he previously did.  (R. 25, 169).  As mentioned concerning social functioning, he reports that he has difficulty following instructions and he has trouble finishing what he starts.  (R. 25, 170).

With regard to episodes of decompensation, the record shows that Plaintiff

suffered one or two episodes of extended duration. He was admitted to the Birmingham VA Medical Center in September 2012 for increased mental health symptoms, including hearing voices. (R. 25-26, 331). The notes from the admission provide that Plaintiff had been off his medications for approximately two months. (R. 331). He was discharged in stable condition with a GAF score of 58, indicating only moderate symptoms. (R. 28, 328). He was also admitted in August 2014 to the VA Medical Center after he presented with violent thoughts, including thoughts of harming other persons. (R. 28, 689, 698). Plaintiff reported that he was inconsistent taking his medications and he was smoking "a marijuana blunt a day." (R. 26, 689-90). He was released in stable condition. (R. 26, 677, 683, 690).

In order to satisfy the paragraph C requirements, Plaintiff must demonstrate that his anxiety-related disorder results "in complete inability to function independently outside the area of one's home." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06C. The ALJ properly concluded that Plaintiff "does not suffer an anxiety related disorder that results in complete inability to function independently outside ... the home," because he was able to drive to doctors' appointments, he picked his children up at day care, and he attended classes. (R. 26).

Because substantial evidence supports the ALJ's determinations concerning

Paragraphs B and C, Plaintiff's challenge is without merit. Plaintiff has not presented any evidence that sufficiently questions the ALJ's decision. Plaintiff does argue that the ALJ improperly discounted the disability rating from the VA and other supporting medical evidence. (Doc. 10 at 7-9). The other medical evidence included a July 23, 2014 crisis call in which Plaintiff reported feelings of agitation, anhedonia, and detachment - even from his children. (*See* R. 703). He also stated in the call that he felt like he was "turning into a savage." (*Id*.) The other medical evidence was the August 2014 hospitalization for homicidal thoughts that was discussed above. The court finds that the ALJ properly considered this evidence.

With regard to the July 23, 2014 call and the August 1, 2014 hospitalization, the ALJ correctly found that Plaintiff had been non-compliant with his medications prior to this admission. (R. 28, 690). Additionally, the ALJ correctly found that Plaintiff had a normal mental status examination at his follow-up appointment on November 10, 2014. (R. 28, 665-66). The court also notes that Plaintiff reported in his September 18, 2014 visit that he had just come from a business organization meeting at school (college class), he was doing well in school, and he would be graduating in about a year. (R. 672).

With regard to his VA disability rating, the ALJ properly determined that

the VA "finding that [Plaintiff] is not 100 percent disabled is consistent with [his] activities, examination findings, and treatment records as a whole." (R. 29). The ALJ gave the VA disability rating some weight, stating that it "is another governmental agency's adjudicative finding based on its rules and is not a medical opinion that must be evaluated, but has been considered nonetheless (*see* SSR 06-03p[5])." (R. 29). *See Banach v. Comm'r of Soc. Sec.*, No. 6:15-cv-00478-JSS, 2016 WL 626138, at *6 (M.D. Fla. Feb. 17, 2016) (noting that the Commissioner evaluates evidence used by the VA or other agencies "just as it would any other evidence in the record, in accordance with 20 C.F.R. § 404.1527 and SSR[s] 96-2p, 96-5p, and 06-03p."). Plaintiff has not adequately challenged the ALJ's determination.

The ALJ's determinations are supported by substantial evidence. Plaintiff has not demonstrated that he satisfied Listing 12.06 by showing he met the requirements in paragraphs A and B or A and C. Thus, Plaintiff's first challenge is without merit.[6]

---

[5]Social Security Ruling ("SSR") 06–03p "clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources' and from 'non-medical sources,' such as teachers, school counselors, social workers, and others who have seen the individual in their professional capacity, as well as evidence from employers, spouses, relatives, and friends. SSR 06–03p, 2006 WL 2329939 at *4." *McGruder ex rel D.M. Astrue*, No. 1:11–CV–0468–JSA, 2012 WL 5817938 at *7 (N.D. Ga. Nov. 16, 2012).

[6]Plaintiff also references that following the November 2014 hospitalization, he reported that he witnessed two more deaths while he was a coal miner, which exacerbated his condition.

Plaintiff next asserts in a single sentence that the ALJ "could have drawn on the expertise of a medical expert ... to assist him in determining whether a Listing was in fact met and/or [in] deriving a comprehensive RFC." (Doc. 10 at 11). In support of this challenge, he argues that a "vocational expert's (VE) testimony does not constitute substantial evidence absent a comprehensive hypothetical." (*Id*. (quoting *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002)). The Commissioner argues, "Although the ALJ could have decided to call a medical expert, he was not required to do so because the record contains sufficient evidence to make an informed decision." (Doc. 11 at 16 (citing *Doughty*, 245 F.3d at 1281; *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988)). The court agrees.

Plaintiff is entitled to no relief on this claim for two reasons. First, Plaintiff has failed to show that medical expert testimony was necessary for the ALJ to make an informed decision. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate

---

He stated that the "working conditions and loud noises reminded him of his combat experiences." (Doc. 10 at 8 (citing R. 653)). This factual recitation adds little to Plaintiff's disability claim since the ALJ found that Plaintiff is unable to perform his past work, including as a coal mine roof bolter. (R. 31).

but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Plaintiff has not identified any evidentiary gap in the record that warrants a remand of this case. Second, Plaintiff has failed to show that the decision of the ALJ would have been different had an additional examination or evaluation been performed. *See Jones v. Astrue* 863 F. Supp. 2d 1142, 1154 (S.D. Ala. 2014) (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)). Stated another way, the ALJ properly considered the record, which provides substantial evidence to support his listing and RFC findings.

Plaintiff next argues that the ALJ should have found his knee problem was a severe impairment and should have included a knee limitation in his RFC – especially when the issues with his right foot are considered. (Doc. 10 at 12-13). He also argues that this failure resulted in the formulation of an incomplete hypothetical to the VE. (*Id.*) The Commissioner responds that the evidence supports the ALJ's step-two finding that Plaintiff's bilateral knee strains were not a severe impairment because bilateral knee views showed normal findings. (Doc. 11 at 16-17 (citing R. 24, 276)). Additionally, she argues that "[b]ecause Plaintiff failed to show he had any work-related limitations due to his knees, the ALJ was not required to include any in his RFC assessment or hypothetical to the

vocational expert." (*Id*. (citing 20 C.F.R. §§ 404.1512, 404.1527(b),

404.1545(a)(3), 404.1546(c); SSR 96-8p, 61 Fed. Reg. 34,474-01, 34,477 (July 2,

1996)). Again, the court agrees with the Commissioner.

The ALJ thoroughly evaluated Plaintiff's knee situation.[7] He found that

while Plaintiff experienced knee pain, the medical evidence showed normal

findings but for some tibial tuberosity. (R. 24). The record demonstrates that a

May 2014 x-ray of Plaintiff's knees revealed that both knees were normal except

for "a small left knee tibial tuberosity enthesophyte."[8] (R. 429). Dr. Melvin

Williams assessed Plaintiff's physical health in June 2014, including his knee. Dr.

Williams found that his physical health was generally within normal limits. (R.

27). Specifically, he found that Plaintiff had a normal gait, there was no edema in

his extremities, "[h]e needed no assistive device despite not being able to perform

a full squat," and he had negative straight leg raise testing. (*Id*.) Plaintiff's May

2015 physical examination showed no substantial change in his condition from the

previous year. (R. 27). He still required the use of knee braces and he had a

steady gait. (R. 711). He was diagnosed with bilateral knee strain with

---

[7]Plaintiff attributes his knee issues to running and jumping out of trucks while with the Marines. He was diagnosed with a bilateral knee strain around 2008. (R. 502).

[8]The radiologist noted that there was "[n]o change from [the] prior" x-ray in October 2010. (R. 428-29).

16

"intermittent moderate bilateral knee pain and stiffness."  (R. 708, 717).  The notes

reflect that he experienced "flare-ups" with prolonged walking or standing.  (R.

718).

Plaintiff's foot condition includes the following: "right [second] toe fracture

with residual flexion deformity" from a 2007 injury,[9] pes planus (flat foot), and

hammertoe surgery.  (R. 25, 511-12).  These conditions result in pain and

subsequent loss of some function.  (R. 511-14).  Plaintiff complained of chronic

right foot pain in his May 2014 medical visit.  (R. 264).  X-rays from that time

show no significant changes from his prior x-rays in October 2010.  (R. 428).

They do show a "healed fracture of the medial cuneiform and chronic flexion

deformity of the second toe" and some degenerative changes at the first TMT

joint.  (*Id.*)  Dr. Williams noted Plaintiff's complaints concerning the fracture, his

deformed toe, and chronic pain in his May 2015 assessment.  (R. 253).  During the

physical examination, Dr. Williams also noted Plaintiff was in no acute pain, he

had normal gait, and he ambulated freely during the examination.  He also noted

that Plaintiff was receiving disability benefits for his foot conditions.  May 2015

x-rays showed no changes from his 2014 x-rays.  (R. 427).  Plaintiff had

hammertoe surgery in November 2015.  (R. 25, 571).  After some post-surgery

---

[9]Plaintiff states he hurt his toe when he hit the corner of a dresser.  (R. 511).

pain, he progressed well and subsequently had normal findings.  (R. 564-65, 570, 572).[10]

> In assessing Plaintiff's RFC, the ALJ stated, in pertinent part:
>
> The claimant's allegation of disability is not wholly consistent with the evidence of record.  The allegations of severity of his physical pain and arising limitations is not wholly consistent with the claimant's lack of any significant abnormal physical examination findings, his activities of daily living, and newer evidence received at the hearing level. ...
>
> In sum, the above residual functional capacity assessment is supported by the claimant's ... physical examination findings essentially within normal limits, no significant abnormal physical findings to support the alleged level of severity of symptoms, and in light of his activities of daily living, such as being able to take care of his children and go to school.

(R. 30-31).  Plaintiff has not adequately challenged these findings.  Accordingly, the court finds that the hypothetical question posed to the VE encompassed all the limitations the ALJ included in his assessment of Plaintiff's RFC.  The VE's testimony, therefore, was properly considered by the ALJ.  It also provides substantial evidence that Plaintiff could perform jobs such as electrical parts cleaner, fixture assembler, and line worker.  (R. 31-32, 61).

Lastly, Plaintiff asserts that the ALJ improperly gave little weight to the opinion of his examining VA clinical psychologist – Dr. Kristi Clements.

---

[10]Plaintiff also wore a TENS unit for low back pain.  (R. 269).

Specifically, he argues, "The ALJ undermined the integrity of this mental health professional in asserting that she relied too heavily on [Plaintiff's] subjective complaints and that the assessment was inconsistent with ... [his] ability to help raise his kids." (Doc. 10 at 10-11 (citing R. 29)). Plaintiff also states that the ALJ's conclusion is disingenuous in light of the fact that his symptomology included "harbor[ing] thoughts about harming his children," which led to "a psychiatric admission." (*Id*. at 11 (citing R. 699)). The Commissioner responds that the ALJ properly considered and weighed the opinion of Dr. Clements. (Doc. 11 at 17). The court agrees.

The record establishes the following: Dr. Clements examined Plaintiff one time on November 20, 2014. She completed a "Review Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire." (R. 650-57). She listed Plaintiff's current diagnoses as PTSD, chronic; alcohol use disorder; and unspecified depressive disorder. (R. 650-51). She found that Plaintiff's PTSD symptoms included arousal, avoidance, re-experiencing symptoms, and negative alterations in mood/cognition in relation to trauma. (R. 651). His symptoms of depressive disorder included depressed mood and a history of suicidal ideation, but with no current suicidal ideation, intent, or plan. (R. 651). She further found there was some overlap of PTSD and depressive disorder symptoms, "including

sleep disruption, irritability, social withdrawal, [and] anhedonia." (R. 651). Dr. Clements checked off all the PTSD criteria from the *Diagnostic and Statistical Manual of Mental Disorders*, 5th edition. (R. 654-55). Criterion G states, "The PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." (R. 655). In the "remarks" section of the questionnaire, Dr. Clements listed Plaintiff's subjective complaints, including chronic depressed mood, weight loss, sleep disturbance at least two nights per week, nightmares about four times per month, occasional daytime fatigue, increased anger/irritability, engaging in physical altercations with his adult brothers, increased anxiety, pacing, panic attacks (specific frequency could not be ascertained), frequent flashbacks, feeling emotionally numb, distressing recollections of military service, and difficulty being around crowds. (Doc. 11 at 19 (citing R. 656-57)).

In assessing the weight to be given the evidence provided by Dr. Clements, 20 C.F.R. § 404.1527(a)(2) provides guidance. The regulation states that the ALJ is to consider the following factors in deciding the weight he or she gives to any medical opinion: examining relationship, treatment relationship, supportability of the medical opinion, consistency with the record as a whole, specialization, and other factors, including the medical professional's understanding of the SSA's

disability programs. *Id*. In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The court finds for a number of reasons that the ALJ's opinion is supported by substantial evidence. First, it is undisputed that Dr. Clements examined Plaintiff one time. She, therefore, is due to be treated as an examining physician because she does not have an ongoing relationship with Plaintiff. Accordingly, her opinion is not entitled to deference. *See Stone v. Comm'r*, 544 F. App'x 839, 842 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (stating that "[t]he opinion of a treating physician is entitled to substantial weight unless 'good cause' is shown to the contrary"). Second, the ALJ provided several reasons for discounting Dr. Clement's opinion:

> She overly relies on the claimant's subjective complaints, and did not wholly consider the claimant's noncompliance with medication as a source of the claimant's increased mental health symptoms. It is not wholly consistent with the claimant's ability to attend college, and interact and help raise his kids. In addition, she does not qualify her opinion in function-by-function terms wholly. Thus, this opinion is given little weight.

(R. 29). This reasoning is supported by the record. For example, the "remarks"

section of Dr. Clement's assessment is replete with references to Plaintiff's representations of his history and symptoms. (R. 656-57). There are no references to test results, medical findings, or other medical records supporting Plaintiff's symptomology and its purported impact on him. (*Id*.) Additionally, as noted by the ALJ, Dr. Clements failed to consider Plaintiff's history of medication non-compliance in rendering her opinion concerning the impact of Plaintiff's PTSD symptoms on his ability to work. In contrast, the ALJ found that Plaintiff's symptoms were generally controlled with medication, but exacerbated when he was noncompliant. (*See,* e.g., R. 28 (In September 2012, Plaintiff admitted hearing voices when he had been noncompliant with his medications for two months. Additionally, in August 2014, he presented with homicidal thoughts when he was "inconsistent with taking his medication and normally stopped taking them.")). Third, Plaintiff's ability to attend college, spend some time out in public, and generally assist his wife in the raising of his children also discount Dr. Clement's opinion.

In sum, the court finds the ALJ has adequately expressed his reasoning for discounting Dr. Clement's opinion. His detailed analysis underscores the deficiencies in her analysis and the problem when a medical professional provides a general statement that Plaintiff's symptoms "cause clinically significant distress

or impairment in ... occupational ... areas of functioning." (R. 655). *See* 20 C.F.R. § 1527.404(c)(6) (Other factors)). Accordingly, his decision to afford Dr. Clement's opinion "little weight" is supported by substantial evidence.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered.

**DONE,** this the 7th day of May, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge